**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Cynthia L Boslet, | No:     3:20-cv-71 |
| Plaintiff | Civil Action – Law |
| *versus* | (Electronically filed) |
| Evey Black Attorneys, LLC, the Law Offices of Louis S Walton, LLC, Nathan W Karn Sr, Esquire, Amy Orr Rosensteel, Esquire, and Kathy J Mauk, Esquire, | Jury Trial Demanded |
| Defendants | |

**COMPLAINT**

Plaintiff Cynthia L Boslet ("Boslet"), by and through her attorneys, files this

complaint, stating as follows:

**Introduction**

1.    For more than 25 years, Boslet worked as a legal assistant for the

Defendants and a predecessor law firm in Altoona. Despite Boslet's stellar

job performance, in October 2018, the Defendants unceremoniously

terminated her, shortly after she disclosed significant health concerns and then transferred her duties to a younger employee.

2.      Defendants discriminated against Boslet because of her status as a qualified employee with a disability, a record of disability, and/or defendants' perception that she is an individual with a disability.  Furthermore, Defendants discriminated against Boslet based on her age.

3.      Boslet asserts claims against Defendants Evey Black Attorneys, LLC ("Evey Black") and the Law Offices of Louis S Walton, LLC ("LSW") under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*, as amended by the ADA Amendments Act of 2008 (ADA), the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq* (ADEA), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, (PHRA).

4.      For years prior to Boslet's termination, the Defendants systematically failed to pay wages and benefits due to Boslet under her employment agreement. Boslet brings this action to remedy this wage theft by her former employers, Evey Black, LSW, and individual decision-makers Nathan W Karn Sr, Esquire ("Karn"), Amy Orr Rosensteel, Esquire ("Rosensteel"), and Kathy J Mauk, Esquire ("Mauk"), pursuant to the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 et seq (WPCL) and common law.

**Parties, Jurisdiction, and Venue**

5.  Boslet is an adult individual who, at all relevant times, resided and worked in Blair County, Pennsylvania.

6.  Defendant Evey Black is a Pennsylvania professional limited liability company with a registered address at 401 Allegheny St, Hollidaysburg, PA 16648.

7.  Defendant LSW is, upon information and belief, a former business entity with an address of 615 Howard Ave #201, Altoona, PA 16601.

8.  Defendant Karn is an adult individual with a business address of 401 Allegheny St, Hollidaysburg, PA 16648. At all relevant times, Karn was a decision-maker with regard to the failure to pay wages due and owing to Boslet.

9.  Defendant Rosensteel is an adult individual with a business address of 401 Allegheny St, Hollidaysburg, PA 16648.

10. At all relevant times, Rosensteel was a decision-maker with regard to the failure to pay wages due and owing to Boslet.

11. Defendant Mauk is an adult individual with a business address of 401 Allegheny St, Hollidaysburg, PA 16648.

12.  At all relevant times, Mauk was a decision-maker with regard to the failure to pay wages due and owing to Boslet.

13.  This Court has original jurisdiction pursuant to 28 U.S.C. §1331, as this case arises under the laws of the United States, pursuant to the ADA and ADEA.

14.  This Court has supplemental jurisdiction over Boslet's state law claims pursuant to 28 U.S.C. §1367.

15.  Venue lies in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because Defendants are domiciled in this judicial district and the facts, occurrences, acts, omissions, and incidents giving rise to the claims took place within this judicial district.

16.  Boslet timely filed a Charge of Discrimination with the US Equal Employment Opportunity Commission (EEOC), which was dual-filed with the Pennsylvania Human Relations Commission alleging age and disability discrimination under the ADA, ADEA, and PHRA. Although Boslet has not yet received a right to sue letter from the EEOC, the interest of judicial economy is best served litigating the federal and state law claims together and Defendants have agreed they will not raise any defense for failure to exhaust administrative remedies.

17.  At all relevant times, the corporate defendants acted through their agents,

apparent agents, servants, apparent servants, and/or employees who were

authorized and acting within the scope of authority, course of employment,

and/or under the direct control of the corporate defendants.

**Underlying Facts**

18.  Boslet incorporates the above allegations here.

19.  Boslet's date of birth is April 16, 1969.

20.  Boslet is a legal assistant who began working for Louis S Walton, Esquire in

or around 1992.

21.  Attorney Walton had an Altoona-based workers' compensation practice,

which he operated as a sole proprietor.

22.  In or around September 2012, Evey Black purchased Attorney Walton's

practice.

23.  Pursuant to an agreement ("LSW Agreement"), Attorney Walton permitted

Evey Black to use his name and continue his practice as The Law Offices of

Louis S Walton, LLC upon Attorney Walton's retirement in 2012. *See* LSW

Agreement, included here as **Exhibit A**.

24.  From 2012 to 2018, LSW was a wholly owned subsidiary of Evey Black.

25.   Evey Black primarily ran its workers' compensation practice out of its LSW office in Altoona.

26.   Evey Black also advertised LSW on its website as a "satellite office."

27.   Upon information and belief, Evey Black did not maintain LSW as a truly separate legal entity by, among other things, commingling funds between the two entities.

28.   Upon information and belief, Evey Black shuttered LSW in late 2018 and Evey Black is the corporate successor to LSW.[1]

29.   At all relevant times, LSW and Evey Black were interrelated in terms of management decisions and financial matters, shared common ownership and management, and had centralized control of labor relations.

30.   On September 24, 2012 (around the same time Evey Black purchased Attorney Walton's practice), Evey Black and LSW entered into an employment agreement and addendum ("Employment Agreement") with Boslet. *See* Employment Agreement, included here as **Exhibit B**.

---

[1] In a March 8, 2019 letter to Boslet, Evey Black's attorneys also asserted that Evey Black is the successor to LSW.

31.  Mauk was the attorney in charge at the LSW office and, upon information and belief, was an employee, partner, shareholder, and/or owner of Evey Black at all relevant times.

32.  Mauk executed the LSW Agreement on behalf of LSW and Boslet's Employment Agreement on behalf of LSW and Evey Black.

33.  Pursuant to her Employment Agreement, Boslet was to receive, among other benefits, the following:

   a.  A guaranteed annual salary of $52,000;

   b.  A bonus, calculated as 23% of the office's gross earnings, less Boslet's salary, for gross earnings up to $425,000 each year;

   c.  A bonus, calculated as 25% of the office's gross earnings, less Boslet's salary, for gross earnings in excess of $425,000 each year;

   d.  Retirement account contributions in the amount of 3% of the firm's gross income;

   e.  The use of an office cell phone; and

   f.  Retirement account contributions in the amount of 5% of the firm's gross income when it exceeded $300,000.

34.  Boslet was fully qualified and capable to perform all duties and responsibilities associated with her position.

35.   Boslet performed all duties and responsibilities in a satisfactory manner consistent with Defendants' legitimate business expectations.

36.   On or about June 19, 2018, Boslet notified Mauk that she suffered from carpal tunnel syndrome in both hands.

37.   In or about September 2018, Boslet informed Mauk that she required total knee replacement for both knees due to medical issues.

38.   In September and October 2018, Boslet advised Mauk that she was treating with a mental health counselor for depression.

39.   Carpal tunnel syndrome is a medical impairment that substantially limits one or more of Boslet's major life activities and one or more major bodily functions.

40.   Degenerative knee damage is a medical impairment that substantially limits one or more of Boslet's major life activities and one or more major bodily functions.

41.   Depression is a medical impairment that substantially limits one or more of Boslet's major life activities and one or more major bodily functions.

42.   Boslet's medical conditions are permanent or long-standing in duration.

43.   Boslet's medical impairments are disabilities under the ADA.

44. On or about October 2, 2018, LSW/Evey Black unceremoniously terminated Boslet's employment.

45. On that date, Boslet was the only person in the office, as Mauk had left for the day. Without notice, Evey Black blocked Boslet's computer access and the firm's IT professional and Mauk would not respond when Boslet sought assistance. Then, the landlord's assistant came into the office, looking puzzled when she saw Boslet, and informed Boslet that she had been instructed by Evey Black to change the locks to the office. At that time, Boslet had not yet been informed by her employers that her employment had been terminated. Apparently, Evey Black mistakenly believed Boslet was out of the office and had attempted to surreptitiously lock her out without even extending the courtesy of telling Boslet she had been fired.

46. From 2013 through 2017, Boslet was paid her full annual base salary.

47. In 2018, Boslet was paid only through October 2 and was not paid the full $52,000 annual salary guaranteed under the Employment Agreement.

48. Boslet did not receive the full amount of bonus properly due to her in some or all of the years covered by her Employment Agreement.

49. Boslet did not receive the full amount of retirement contributions due to her in any of the years covered by her Employment Agreement.

50. Under the terms of the Employment Agreement, Boslet was to be provided with a company cell phone as a fringe benefit. Defendants failed to provide this benefit yet required Boslet to pay for her own cell phone to use for performing work away from the office.

51. Following the termination of her employment, Boslet's job duties were given to an individual who was not disabled and is significantly younger than Boslet.

**COUNT I**
**Americans with Disabilities Act**
**Discrimination and Retaliation**
***Boslet v LSW & Evey Black***

52. Boslet incorporates the above allegations here.

53. LSW and Evey Black are employers subject to the ADA.

54. Boslet has been subjected to continuing discrimination and disparate treatment on the basis of her disabilities, her record of disabilities, and/or Defendants' regard of her as an individual with disabilities in a manner affecting the terms and conditions of her employment.

55. Defendants knew that Boslet suffered with disabilities and may require reasonable accommodations, including but not limited to modified work duties and/or intermittent medical leaves of absence.

56. However, because Defendants knew or suspected that the seriousness of Boslet's disabilities may require future accommodations, Defendants chose to terminate Boslet's employment rather than accommodate her disability.

57. Defendants discriminated against Boslet on account of her disabilities, her record of disabilities, or its regard of Boslet as an individual with disabilities and retaliated against Boslet for requesting and attempting to use reasonable accommodations, a protected activity, including, but not limited to, the following:

   a. Failing to participate in the interactive process designed to cooperatively identify reasonable accommodations that would permit Boslet to perform the essential functions of her job;

   b. Unreasonably interfering with the manner in which Boslet performed her job;

   c. Purposefully disrupting Boslet's working conditions;

   d. Purposefully sabotaging Boslet's interpersonal relationships with colleagues;

   e. Failing to exercise reasonable care to prevent and/or remedy disability discrimination in the workplace;

f.  Treating Boslet differently than similarly-situated non-disabled employees;

g.  Falsely advising Boslet that the LSW office was not making a profit;

h.  Attempting to lock Boslet out of the LSW office in a way to cause her mental anguish and distress;

i.  Terminating Boslet's employment on October 2, 2018, without cause;

j.  Failing to pay Boslet wages and fringe benefits due to her after her termination; and

k.  Unduly opposing or taking adversarial positions with regard to Boslet's workers' compensation claim after her termination.

58.  The discrimination, disparate treatment, and retaliation based on Boslet's disabilities was willfully and knowingly undertaken by Defendants and thereby exhibit a deliberate indifference to Boslet's statutorily protected rights.

59.  Defendants' policies with respect to disability discrimination and disparate treatment were utterly deficient and inadequate to prevent, correct and/or remedy unlawful disability discrimination and disparate treatment in the

workplace and therefore exhibit a deliberate indifference to Boslet's statutorily protected rights.

60.    The intentional disability discrimination, disparate treatment, and retaliation resulted in tangible job detriments and/or adverse employment action including but not limited to the unlawful discharge of Boslet's employment effective October 2, 2018.

61.    Boslet alleges that Defendants' unlawful disparate treatment, discrimination, and retaliation, as more fully described above, were of a continuing nature that persisted up to and including her date of termination.

62.    Boslet is entitled to all appropriate remedies under the ADA.

**COUNT II**
**Age Discrimination in Employment Act**
**Discrimination and Disparate Treatment**
***Boslet v LSW & Evey Black***

63.    Boslet incorporates the above allegations here.

64.    LSW and Evey Black are employers subject to the ADEA.

65.    Defendants knew that Boslet had been working in the industry for decades and that she had a specific way of working.

66.    Defendants knew that Boslet and Attorney Walton had worked together for decades and had created a specific manner of handling cases.

67.    Defendants knew that Boslet was experienced and well-versed in the industry and required little oversight by an attorney.

68.    Defendants discriminated against Boslet on account of her age, including but not limited to the following:

   a.   Unreasonably interfering with the manner in which Boslet performed her job;

   b.   Purposefully disrupting Boslet's working conditions;

   c.   Purposefully sabotaging Boslet's interpersonal relationships with colleagues;

   d.   Failing to exercise reasonable care to prevent and/or remedy age discrimination in the workplace;

   e.   Treating Boslet differently than similarly-situated younger employees;

   f.   Falsely advising Boslet that the LSW office was not making a profit;

   g.   Attempting to lock Boslet out of the LSW office in a way to cause her mental anguish and distress;

   h.   Terminating Boslet's employment on October 2, 2018, without cause;

    i.   Failing to pay Boslet wages and fringe benefits due to her after her termination; and

    j.   Unduly opposing or taking adversarial positions with regard to Boslet's workers' compensation claim after her termination.

69.   Upon terminating Boslet's position, Defendants reassigned Boslet's job and/or duties to a substantially younger person or persons.

70.   The discrimination and disparate treatment on the basis of age was willfully and knowingly undertaken by Defendants and therefore exhibit a deliberate indifference to Boslet's statutorily protected rights.

71.   Defendants' policies with respect to age discrimination and disparate treatment were utterly deficient and inadequate to prevent, correct and/or remedy unlawful age discrimination and disparate treatment in the workplace and thereby exhibit a deliberate indifference to Boslet's statutorily protected rights.

72.   The intentional age discrimination and disparate treatment resulted in tangible job detriments and/or adverse employment action including but not limited to the unlawful discharge of Boslet's employment effective October 2, 2018.

73. Boslet alleges that Defendants' unlawful disparate treatment and discrimination, as more fully described above, were of a continuing nature that persisted up to and including her date of termination.

74. Boslet is entitled to all appropriate remedies under the ADEA.

## COUNT III
## Pennsylvania Human Relations Act
### *Boslet v All Defendants*

75. Boslet incorporates the above allegations here.

76. LSW and Evey Black are employers subject to the PHRA.

77. As stated in Counts I and II above, Defendants discriminated and retaliated against Boslet based on her disabilities and age.

78. Defendants' actions and omissions described above also violate the general discrimination and retaliation provisions of the PHRA.

79. Defendants willfully violated the PHRA when they discriminated against Boslet on the basis of her disabilities and age.

80. Karn, Rosensteel, and Mauk aided and abetted in the discriminatory and retaliatory acts toward Boslet as the decision-makers for this conduct.

81. Boslet is entitled to all appropriate remedies under the PHRA.

**COUNT IV**
**Breach of Contract**
***Boslet v LSW & Evey Black***

82.     Boslet incorporates the above allegations here.

83.     As described above, Boslet entered into the Employment Agreement with

        LSW and Evey Black, which entitled Boslet to certain compensation and

        benefits.

84.     Boslet performed all of her obligations under the Employment Agreement

        and was never reprimanded or disciplined in any way.

85.     LSW and Evey Black breached their obligations to Boslet under the

        Employment Agreement by failing to pay all compensation and benefits

        due to Boslet.

86.     LSW and Evey Black are liable to Boslet for the amounts due and owing

        under the Employment Agreement.

87.     As a direct and proximate result of the Defendants' breach of contract,

        Boslet sustained incidental and consequential damages.

88.     The precise amount of unpaid bonus and retirement contributions cannot

        be determined without an accounting of defendants' books, which are not

        in Boslet's possession.

89.     Boslet is entitled to all appropriate remedies for breach of contract under

        Pennsylvania law.

**COUNT V**
**Violation of Pennsylvania Wage Payment & Collection Law**
***Boslet v All Defendants***

90.     Boslet incorporates the above allegations here.

91.     Pursuant to the Employment Agreement, LSW and Evey Black were

        contractually obligated to, among other things, pay Boslet a guaranteed

        annual salary of $52,000, performance bonuses, and make contributions to

        Boslet's retirement account.

92.     Defendants improperly calculated the bonus amounts due to Boslet and, in

        turn, underpaid Boslet's bonuses.

93.     Defendants failed to provide Boslet the full amount of annual retirement

        contributions due to her.

94.     The salary, bonuses, and retirement benefit due to Boslet constitute "wages"

        under the WPCL.

95.     Boslet has made demand to Defendants for the unpaid wages, yet

        Defendants continue to refuse to pay the amounts owed.

96.     In addition, Defendants have refused to pay Boslet accrued but unused PTO

        upon Boslet's termination.

97.   Payment by Defendants of wages earned by Boslet, as more fully described above, has not been made and was not made to Boslet within the time requirements under the WPCL.

98.   Because Boslet is not in possession, custody, and/or control of documents and other information which would permit her to calculate with specificity the exact amount of earned but unpaid wages, Boslet is unable to ascertain the exact amount of unpaid wages at this time.

99.   Defendants possessed no good faith basis for failing to pay Boslet the wages and fringe benefits she earned and is owed.

100.   As a result of Defendants' lack of good faith, Boslet is entitled to liquidated damages pursuant to the WPCL, in an amount which cannot yet be calculated with certainty due to the ongoing nature of this litigation.

101.   Defendants' failure to pay wages to Boslet renders Defendants liable to Boslet for attorneys' fees and costs pursuant to the WPCL.

102.   Defendants Karn, Rosensteel, and Mauk exercised policy-making functions with regard to Boslet's employment and the decisions to fail to pay the wages owed to her.

103.   Each of the Defendants is considered Boslet's "employer" for purposes of the WPCL.

**Prayer for Relief**

Plaintiff Cynthia L Boslet, requests this Court enter judgment in her favor and against Defendants for the following, where applicable under the causes of action in the counts listed above:

- Back pay and benefits;

- Reinstatement;

- Front pay and benefits should reinstatement prove unfeasible;

- Statutory prejudgment interest;

- Compensatory damages;

- Liquidated damages;

- Punitive damages;

- Attorneys' fees and litigation costs; and

- Any other relief that this Court deems just and equitable.

Respectfully submitted,

**KREVSKY BOWSER LLC**

By:   /s/ Anthony T Bowser
Anthony T Bowser (PA #204561)
abowser@krevskybowser.com
Solomon Z Krevsky (PA #72719)
skrevsky@krevskybowser.com
20 Erford Road | Suite 300A
Lemoyne, PA 17043
717.731.8600 telephone
*Counsel for Plaintiff*

Dated:  4/15/2020